Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| PARTIDO POPULAR DEMOCRÁTICO<br><br>Apelante<br><br>v.<br><br>PEDRO PIERLUISI URRUTIA Y OTROS<br><br>Apelados | KLAN202400275 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Sobre: Sentencia Declaratoria, Injunction Preliminar y Permanente<br><br>Caso Núm. SJ2023CV10560 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de septiembre de 2024.

La parte apelante, el Partido Popular Democrático, comparece ante nos para que dejemos sin efecto la *Sentencia* emitida y notificada por el Tribunal de Primera Instancia, Sala de San Juan, el 30 de enero de 2024. Mediante la misma, el foro primario desestimó una acción civil sobre sentencia declaratoria e injunction preliminar y permanente promovida en contra de los aquí apelados, el Estado Libre Asociado de Puerto Rico, el Honorable Gobernador de Puerto Rico, Pedro Pierluisi Urrutia, el señor Manuel Cidre Miranda, Secretario del Departamento de Desarrollo Económico y la señora Eileen M. Vélez Vega, Secretaria del Departamento de Trasportación y Obras Públicas y las referidas agencias.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**I**

El 11 de octubre de 2023, la parte apelante presentó la demanda original del caso de epígrafe. En la misma, expuso que, por

espacio de seis (6) meses, los apelados incurrieron en un gasto superior a $3,000,000.00 de fondos públicos, en una campaña política difundida por varios medios de comunicación para, alegadamente, promover la figura del apelado Pierluisi Urrutia como gobernador reelecto en las próximas elecciones generales. En particular, indicó que la campaña en controversia utilizó el lema publicitario *"Haciendo que las cosas pasen"*, ello, a su juicio, para contrarrestar las críticas a su falta de obra.

En el pliego, la parte apelante expresó que los anuncios de referencia carecían de un fin o propósito público legítimo, toda vez que los mismos eran, exclusivamente, de carácter político. En apoyo a dicha afirmación, sostuvo que el apelado Pierluisi Urrutia utilizó la referida frase durante su campaña política en el año 2020.

Como primera causa de acción, la parte apelante aludió al Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico, 1 LPRA Tomo 1, el cual solo se permite disponer de fondos públicos para fines públicos. A tenor con ello, sostuvo que la conducta de los apelados era inconstitucional. Planteó que, como se estaba dando un uso indebido del erario para adelantar agendas político partidistas, la difusión de la campaña en controversia ocasionaba daños irreparables. A su vez, como segunda causa de acción, la parte apelante invocó los términos de la Ley de Contabilidad del Gobierno de Puerto Rico, Ley Núm. 230 de 23 de julio de 1974, 3 LPRA sec. 283 *et seq.,* según enmendada. En específico, expuso que, de conformidad con la misma, los jefes de las agencias gubernamentales ostentaban un deber de custodia y control respecto a las operaciones fiscales necesarias para la ejecución de sus programas. Sobre ello añadió que, en atención al deber antes indicado, en ocasión a que algún jefe de agencia valide algún pago ilegal o incorrecto, este viene llamado a responder al Gobierno con sus bienes y fondos personales.

Así, toda vez todo lo antes expuesto, la parte apelante solicitó al Tribunal de Primera Instancia que dictara sentencia declarando la inconstitucionalidad del uso de fondos públicos para el diseño, producción y divulgación de los anuncios en litigio. Del mismo modo, solicitó que se dictara una orden de interdicto permanente, prohibiendo a los apelantes utilizar los recursos del Estado para fines políticos partidistas y para suspender la difusión pública de la campaña publicitaria en controversia. Igualmente, la parte apelante solicitó al tribunal sentenciador que ordenara a los apelados Cidre Miranda y Vélez Vega, como jefes de agencia, a reembolsar al erario el dinero cuyo empleo autorizaron para el diseño, producción y divulgación de los anuncios en disputa.

En igual fecha, la parte apelante presentó una *Solicitud de Injunction Preliminar.* En particular, indicó que dada la naturaleza de los daños resultantes de la conducta de los apelados al difundir por los medios de comunicación una campaña publicitaria, a su juicio, ilegal, procedía proveer para impedir que estos continuaran utilizando fondos públicos para sufragar la alegada campaña política de Pierluisi Urrutia. Por ello, solicitó que se dictara una orden de interdicto prohibiendo a los apelados el uso del erario para dicho fin, así como para detener la publicación en los medios de la campaña publicitaria en controversia. La parte apelante acompañó su petición con una declaración jurada suscrita por el señor Jesús M. Ortiz González, Presidente del Partido apelante, dando fe de la veracidad de los hechos alegados en la demanda.

Así las cosas, y tras varios trámites, entre ellos un señalamiento de vista para el 28 de noviembre de 2023, los apelados, en dicha fecha, presentaron una *Moción de Desestimación.* En esencia, plantearon que la demanda no presentaba una reclamación plausible, de modo que la parte apelante cumpliera con el estándar probatorio establecido en el Regla 10.2 de Procedimiento

Civil, 32 LPRA Ap. V, R. 10.2. En apoyo a su postura, expusieron que la frase publicitaria impugnada era una expresión pública de carácter oficial que no se relacionaba a ninguna campaña político partidista, así como que tampoco se vinculaba a la campaña eleccionaria del apelado Pierluisi Urrutia, ni tenía atadura alguna al Partido Nuevo Progresista. Ahora bien, indicaron que, de entenderse procedentes las alegaciones expuestas en su contra, ello en su carácter personal, operaba la defensa de la inmunidad condicionada.

En su alegación responsiva, los apelados indicaron que el lema publicitario en controversia era uno dirigido a orientar al Pueblo sobre los servicios públicos ofrecidos por el Gobierno, ello en cumplimiento con la premisa constitucional del derecho a la información pública. Al amparo de ello, expresaron que, contrario a lo aducido por la parte apelante, la frase *"Haciendo que las cosas pasen"* no fue adoptada como una movida político partidista, sino, que se incorporó como parte de los esfuerzos para adelantar la política pública gubernamental en diversos de los aspectos de su gestión. En el ánimo de sostener su postura, los apelados indicaron que no resultaba una práctica inusual para el Gobierno, el utilizar frases distintivas para difundir información de interés público. Aludieron a lemas como "Puerto Rico lo hace mejor", empleado bajo la administración del ex gobernador Luis Fortuño Burset para promover el turismo, así como "Puerto Rico, la Isla estrella", utilizado bajo la administración del ex gobernador Alejandro García Padilla para promover asuntos oficiales de desarrollo económico. A tenor con ello, indicaron que los anuncios anejados a la demanda en el sistema electrónico de radicaciones, versaban sobre anuncios de diversas obras realizadas en varias agencias, y que, particularmente, el único video anejado, respondía a la campaña del año 2020 del apelante Pierluisi Urrutia, mas no utilizaba la frase

objeto de litigio. Al abundar, sostuvieron que, si bien, el referido video, mostraba una conversación entre el Gobernador y la Comisionada Residente Jennifer González, en el que este le indicó: "voy a hacer que las cosas pasen", dicha aseveración era distinta a la aquí en controversia y se efectuó en el contexto de un diálogo no político. Añadieron, a su vez, que la parte apelante no estableció que la frase en disputa hubiese sido creada, producida o implementada por partido o campaña política alguna, hecho que ratificaba la improcedencia de la demanda.

Al argumentar sobre su postura, los apelados sostuvieron que la jurisprudencia se ha limitado a prohibir, en anuncios financiados con fondos públicos, la inclusión de símbolos, emblemas, colores, fotos o lemas que se hayan usado, o se usen en el contexto político partidista. Indicaron que no existía ninguna ley que prohibiera el uso de fondos públicos para la compra de espacios en los medios de comunicación para informar a la ciudadanía sobre el progreso de la gestión pública. Sobre ello, afirmaron que los anuncios en controversia cumplían con los criterios establecidos por la jurisprudencia para legitimar la inversión del erario en cierta actividad gubernamental. A su vez, expresaron que, de conformidad con el estado de derecho, una vez resuelto el fin público de la actividad gubernamental de que trate, el hecho de que la misma genere un beneficio incidental a favor de alguna persona en particular, no desvirtúa el propósito de la misma. Así, los apelados se reafirmaron en que los anuncios impugnados por la parte apelante respondían a un fin público legítimo, totalmente desvinculado a las alegaciones político partidistas aducidas en su contra.

Por su parte, los apelados indicaron que no procedía la expedición del interdicto preliminar y permanente solicitado por la parte apelante, ello por razón de no concurrir las exigencias

procesales propias a dicho remedio. Igualmente, sostuvieron que tampoco procedía dictar sentencia declaratoria en el caso, toda vez que la parte apelante no estableció la existencia de una incertidumbre jurídica que ameritara la declaración de derecho alguno. De este modo, los apelados solicitaron la desestimación de la demanda de epígrafe. Los apelados anejaron a su alegación responsiva un documento intitulado *Análisis de los Anuncios Incluidos por la Parte Demandante en la Nota Al Calce 1*, así como con copia de la *Determinación* emitida por la Oficina del Contralor Electoral con fecha del 11 de julio de 2012, atendiendo una controversia similar.

Así las cosas, tras ciertas incidencias, el 28 de noviembre de 2023, el apelado Departamento de Desarrollo Económico y Comercio compareció al pleito mediante *Moción para Mostar Causa y de Desestimación*. En esencia, indicó que la demanda no aducía a la procedencia de la concesión de remedio alguno en ley y solicitó la desestimación del pleito.

En igual fecha, a saber, el 28 de noviembre de 2023, dio inicio la vista del caso. Conforme surge de la *Minuta* correspondiente, ambas partes de epígrafe argumentaron sus respectivas posturas. Ante ello, el tribunal primario dispuso que habría de analizar los anuncios en controversia, así como la frase impugnada por la parte apelante, todo a la luz del derecho vigente aplicable al asunto. En lo aquí pertinente, y de acuerdo a las incidencias acontecidas, el Juzgador concedió, a la parte apelante, un plazo de diez (10) días para presentar una demanda enmendada, por razón de entender que la misma no contenía alegaciones específicas.

El 8 de diciembre de 2023, la parte apelante presentó su *Demanda Enmendada.* En la misma, esencialmente reprodujo las contenciones de su demanda original y se reafirmó en la inconstitucionalidad de la frase y los anuncios publicitarios en

controversia. En particular, se reafirmó en que los mismos obedecían al exclusivo propósito de realzar la imagen el apelado Pierluisi Urrutia. A tenor con ello, nuevamente expuso que la frase *"Haciendo que las cosas pasen"*, era una reproducción del lema de campaña eleccionaria que este utilizó en el año 2020 y sostuvo que los anuncios en disputa carecían de un propósito público legítimo. De este modo, se reafirmó en su súplica. La parte apelante acompañó su recurso con la declaración jurada anejada en la demanda original y con copia de los anuncios impresos. Por igual, anejó un documento intitulado *Discusión de los Videos Incluidos en la Demanda.*

El 23 de diciembre de 2023, los apelados Cidre Miranda y el Departamento de Desarrollo Económico y Comercio presentaron una *Moción de Desestimación de Demanda Enmendada.* En esencia, invocaron las disposiciones de la Regla 10.2 (5) de Procedimiento Civil, *supra,* y afirmaron que, aun dando por ciertas a las alegaciones de la demanda, las mismas no exponían una reclamación que justificara remedio alguno en ley. Al abundar, indicaron que la parte apelante no estableció que alguno de los anuncios impugnados, en efecto, respondiera al propósito de beneficiar a un partido político en particular. Igualmente, expresaron que tampoco demostraron que la expresión en controversia era utilizada para adelantar un fin individual de algún partido o candidato. Con relación a ello, añadieron que de los anejos con los cuales la parte apelante acompañó la demanda enmendada, surgía la frase *"Haciendo que las cosas pasen"* nunca fue un lema de campaña política, tal cual lo aducido. Así, y tras argumentar sobre la legitimidad del empleo de fondos públicos en la campaña publicitaria en cuestión, por ser su propósito uno de carácter informativo, solicitaron al Tribunal de Primera Instancia la desestimación del pleito de autos.

Por su parte, el 26 de diciembre de 2023, los aquí apelados conjuntamente presentaron una *Moción de Desestimación de Demanda Enmendada.* En el pliego, nuevamente invocaron las disposiciones de la Regla 10.2 (5) de Procedimiento Civil, *supra*, ello a los fines de sostener que la parte apelante carecía de remedio en ley. Bajo dicha afirmación, reprodujeron sus previos argumentos respecto a la naturaleza informativa de los anuncios en controversia, así como, también, a la legitimidad de la frase *"Haciendo que las cosas pasen",* por estar dirigida a promover la política pública del Gobierno. Los apelados indicaron que la demanda enmendada, conforme presentada, carecía de una relación de hechos demostrativos de una causa de acción válida, ello por estar constituida de alegaciones generalizadas y conclusivas. Indicaron que la parte apelante no expuso relación fáctica alguna a fin de apoyar sus contenciones, hecho que minaba la eficacia de su reclamación. A su vez, expresaron que los anuncios que esta anejó a la demanda enmendada no establecían relación alguna con campaña política en particular, sino que corroboraban la afirmación de que los mismos cumplían con el fin de informar sobre el progreso de distintas obras de carácter público y de implementar y desarrollar estrategias para fortalecer la calidad de los servicios gubernamentales. De este modo, los apelados solicitaron al Tribunal de Primera Instancia que desestimara, en su totalidad, la demanda de epígrafe.

La parte apelante replicó a los argumentos de desestimación de referencia, mediante moción del 8 de enero de 2024. En la misma, en esencia reiteró los argumentos de su demanda. Destacamos que la parte apelante acompañó su pliego con copia de una *Determinación* de la Oficina del Contralor Electoral, notificada el 8 de enero de 2024. En la misma, se dispuso que no se autorizaba el

uso de la frase *"Haciendo que las cosas pasen"* durante la veda electoral.

Tras entender sobre las respectivas posturas de los comparecientes, y luego de ciertas incidencias, el 30 de enero de 2024, el Tribunal de Primera Instancia notificó la *Sentencia* aquí apelada. En su pronunciamiento dispuso que, aun tomando como ciertos los hechos bien alegados, los mismos no constituían una causa de acción válida susceptible de un remedio en ley. En particular, resolvió que, tal cual alegado por los apelados en sus solicitudes de desestimación, la demandada enmendada no cumplió con el estándar de plausibilidad exigido por el ordenamiento procesal para validar el contenido de una demanda. Sobre dicho particular, sostuvo que las alegaciones de la parte apelante eran conclusorias, hecho que tornaba insuficiente su reclamación.

A su vez, en su dictamen, y amparándose en la norma de la academicidad, el tribunal sentenciador desestimó la solicitud de *injunction* promovida por la parte apelante. Sobre ello, resolvió que, mediante el referido mecanismo procesal, esta solicitó que se proveyera para prohibir a los apelados continuar con la difusión de los anuncios en controversia. No obstante, el tribunal destacó que los anuncios en controversia databan del año 2023, previo al inicio de la veda electoral, la cual comenzó el 1 de enero de 2024. A tenor con ello, indicó que, desde dicha fecha, toda expresión gubernamental financiada con fondos públicos era escrutada por la Oficina del Contralor Electoral, entidad sobre la cual recaía el deber de determinar si la misma podía permitirse o modificarse. Añadió que la parte apelante presentó una *Determinación* de la Oficina del Contralor Electoral, la cual estableció que no podía utilizarse la frase *"Haciendo que las cosas pasen"* durante la veda electoral. Así, el Tribunal de Primera Instancia sostuvo que, ante ello, no existía la posibilidad de que la controversia se repitiera, ni que evocara visos

de permanencia, por lo que, al ser académica, estaba impedido de proveer el remedio interdictal solicitado.

Al proseguir en su dictamen, el Tribunal de Primera Instancia dispuso que, de igual modo, estaba impedido de proveer para la sentencia declaratoria solicitada. En cuanto a este particular, expresó que, a fin de obtener el remedio peticionado, la parte apelante se apoyó en la alega inconstitucionalidad del uso de fondos públicos para el diseño, producción y publicación de los anuncios objeto de litigio. No obstante, indicó que, tras analizar si los mismos adelantaban un fin individual de un partido o candidato, o si respondían a un fin público legítimo, surgía que los anuncios en cuestión no incluían símbolos o emblemas relacionados al partido del actual Gobernador. Añadió que, la frase *"Haciendo que las cosas pasen"*, no fue empleada en la campaña electoral del apelado Pierluisi Urrutia en el año 2020, tal cual aducido, ni que constituyera un lema político partidista. A su vez, sostuvo que no se había alegado, de manera específica, ni demostrado, que el referido lema identificara a un candidato en particular, así como, tampoco, que el mismo constituyera un subterfugio para conferir ventaja política al apelado Pierluisi Urrutia.

Al expresarse sobre la función pública de los anuncios en disputa, el Tribunal de Primera Instancia acogió la postura de los apelados y concluyó que los mismos, en efecto, respondían a la intención de informar al pueblo sobre los trabajos y proyectos gubernamentales que distintas agencias estaban llevando a cabo. Detalló que, de estos se desprendía información específica sobre los distintos programas, trabajos y proyectos en curso, y que ninguno aludía a partido político particular. Añadió que la parte apelante no demostró que los anuncios en controversia beneficiaban la campaña eleccionaria del apelado Pierluisi Urrutia y que, de haber recibido un beneficio incidental a cargo de las publicaciones, el ordenamiento

jurídico validaba el empleo del erario en anuncios de dicha naturaleza. Así, sostuvo que, toda vez que de las alegaciones de la demanda no surgían hechos probables, sino meras conclusiones no sustentadas en la prueba presentada, no se podía decretar que era inconstitucional el uso de fondos públicos para la publicación de los anuncios en controversia.   De este modo, al amparo de todo lo antes expuesto, el tribunal sentenciador decretó la desestimación total de la demanda, incluyendo la reclamación de reembolso promovida en contra de los apelados Cidre Miranda y Vélez Vega en su carácter personal.

Inconforme, el 21 de marzo de 2024, la parte apelante compareció ante nos mediante el presente recurso de apelación. En el mismo formula los siguientes señalamientos:

> Erró el Tribunal de Primera Instancia al desestimar la demanda instada en dicho foro por considerar que era académica.
>
> Erró el Tribunal de Primera Instancia al desestimar la demanda instada en dicho foro por considerar que las alegaciones de la demanda no justificaban la concesión de un remedio.
>
> Erró el Tribunal de Primera Instancia al desestimar la demanda instada en dicho foro por considerar que, en la alternativa, de superar el estándar de plausibilidad, y por lo tanto ser las alegaciones plausibles, el uso de fondos públicos en la campaña la publicitaria impugnada es constitucional.
>
> Erró el Tribunal al no emitir una sentencia declaratoria y un interdicto preliminar y permanente que declarara que la campaña publicitaria cuestionada que, entre otras cosas, utilizaba el lema "haciendo que las cosas pasen" no tenía una finalidad política partidista que impedía el uso de fondos públicos para financiarla.
>
> Erró el Tribunal al no ordenar a los codemandados Secretario del Departamento de Desarrollo Económico y a la Secretaria de Transportación y Obras Públicas a reembolsar en su carácter personal la campaña publicitaria cuestionada.

Luego de examinar el expediente de autos y con el beneficio de la comparecencia de ambas partes de epígrafe, procedemos a resolver.

**II**

**A**

Sabido es que nuestro ordenamiento jurídico reconoce el derecho del Pueblo a estar informado. Dicha prerrogativa es consustancial con el derecho al sufragio universal expresamente consagrado en la Sección 2 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA Tomo1, puesto que se entiende que el Pueblo tiene derecho a ejercer su voto de manera informada y con conocimiento sobre las gestiones y obras realizadas por los funcionarios que eligió. A tenor con dicha premisa, se reconoce como principio en nuestro estado de derecho que "la expresión del Gobierno de naturaleza educativa e informativa es indispensable para que el pueblo pueda juzgar su labor y exigir remedios a los agravios gubernamentales." *P.P.D. v. Gobernador I,* 139 DPR 643, 680 (1995). En virtud de ello, "[n]uestra jurisprudencia refleja la tendencia seguida en favor de la divulgación de información pública, al punto de impartirle una dimensión amplia y robusta a la libertad de expresión consagrada en nuestra Carta de Derechos". *Íd.*

No obstante lo anterior, el ejercicio de la antedicha obligación del Estado, está sujeto a ciertos límites y restricciones, tanto de naturaleza constitucional como estatutaria. En lo aquí atinente, la Sección 9 del Artículo VI de la Constitución, *supra*, prohíbe el uso de fondos públicos para fines que no sean de dicha naturaleza. Específicamente, establece que "[s]ólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley". Art. VI, Sec. 9, Const. ELA, LPRA, Tomo 1.

Nuestro más Alto Foro ha establecido que:

[e]l concepto "fin público no es estático, sino que está ligado al bienestar general y que tiene que ceñirse a las cambiantes condiciones sociales de una comunidad específica, a los problemas peculiares que éstas crean y a las nuevas obligaciones que el ciudadano impone a sus gobernantes en una sociedad compleja. Su significado ha cobrado un marco dimensional de naturaleza liberal, *generalmente prevaleciendo el criterio de que los objetivos que estén contenidos en el referido fin público deben redundar en beneficio de la salud, seguridad, moral y bienestar general de todos los ciudadanos.*

*P.P.D. v. Gobernador I,* supra, pág. 686. (Énfasis suplido en el original.)

Cónsono con lo anterior, la jurisprudencia ha delineado los criterios a analizarse para determinar si, cuando mediante ley o mediante una acción gubernamental se efectúa una erogación de fondos públicos, existe, o no, un fin público. Así, y atendiendo el contexto particular del deber de informar a la ciudadanía, se ha dispuesto que, ausente, en la expresión gubernamental de que trate, cualquier símbolo, emblema, color, foto, lema de índole político partidista o la intención de conferir una ventaja indebida a un candidato o partido político, se evaluará lo siguiente: 1) la expresión redunda en beneficio de la salud, la seguridad, la moral y el bienestar general de todos los ciudadanos; 2) está destinada a una actividad de carácter público o semipúblico; 3) promueve los intereses y objetivos de la entidad gubernamental, en consonancia con sus deberes y funciones o la política pública establecida; 4) promueve programas, servicios, oportunidades y derechos, o adelanta causas sociales, cívicas, culturales, económicas o deportivas y; 5) promueve el establecimiento, modificación o cambio de una política gubernamental. *P.P.D. v. Gobernador I,* supra, pág. 691. Una vez se establece que el desembolso de fondos públicos por un ente gubernamental es legítimo, "el hecho de que surja un beneficio incidental en favor de personas particulares no desvirtúa

el fin público a que va dirigida la actividad gubernamental". *Íd.*, pág. 687.

Por su parte, el Artículo 10.006, de la Ley para la Fiscalización del Financiamiento de Campañas Políticas en Puerto Rico, Ley 222-2011, en su Artículo 10.006f, establece ciertas prohibiciones relativas a los gastos de difusión pública del Gobierno en año de elecciones generales. En particular, la precitada disposición reza:

[...]

2. Durante el año en que se realice una elección general se prohíbe a todo departamento, agencia, negociado, junta, oficina, dependencia y corporación pública adscritas a la Rama Ejecutiva; a los gobiernos municipales; a la Asamblea Legislativa y a todos los componentes de la Rama Judicial a desembolsar fondos públicos del Gobierno de Puerto Rico con el propósito de exponer logros, realizaciones, proyecciones, planes o mensajes y contenidos con fines político-partidistas o electorales que busquen resaltar, destacar o desfavorecer a un aspirante, candidato, funcionario electo, partido político o comité sin que previamente se haya solicitado autorización a la Oficina del Contralor Electoral dentro de los términos, los procedimientos y los requisitos ordinarios que para tales fines se hayan establecido en el reglamento de "Fiscalización de Gastos de Difusión Pública". Esta prohibición está dirigida a la compra de tiempo y espacio en los medios de comunicación y difusión, así como a la compra y la distribución de materiales propagandísticos o promocionales.

[...].

16 LPRA sec. 630f (2).

La doctrina interpretativa pertinente establece que la veda estatutaria antes expuesta, evoca "inequívocamente la intención legislativa de excluir definitivamente del proceso político la influencia solapada que el partido en el poder puede tener mediante el uso de los anuncios gubernamentales". *P.P.D. v. Gobernador I,* supra, pág. 682-683. Ahora bien, conforme resuelto por el estado de derecho, dicha disposición no es aplicable a la publicación de anuncios gubernamentales fuera del periodo de la veda electoral. *Íd.* pág. 683. En este escenario, resulta de aplicación la prohibición constitucional sobre el dispendio de fondos públicos previamente

aludida.  Por tanto, corresponde determinar si, tal cual mandata la Sección 9 del Artículo VI, de la Constitución, *supra*, la disposición del erario responde a fines públicos.

**B**

Por su parte, la Ley de Contabilidad del Gobierno de Puerto Rico, Ley Núm. 230 de 23 de julio de 1974, 3 LPRA sec.283, *et seq*, según enmendada, establece la política pública del Estado Libre Asociado con relación al control y la contabilidad de los fondos y la propiedad pública.  A tenor con dicho fin, provee para, entre otros aspectos y en lo que nos atañe, que exista un control previo de las operaciones del Gobierno dentro de cada una de sus dependencias, de modo que el jefe de las mismas pueda desarrollar de manera efectiva los programas que se le han encomendado. 3 LPRA sec. 283a (f).  Así, el referido estatuto expresamente reconoce que los jefes de dependencias, entidades corporativas y Cuerpos Legislativos son, en primera instancia, responsables de la legalidad, corrección, exactitud, necesidad y propiedad de las operaciones fiscales propias a la ejecución de sus programas.  3 LPRA sec. 283a (g).  Ahora bien, toda vez la finalidad de la política pública antes indicada, y en aras de cumplir con la misma, el estatuto de referencia es enfático al indicar que todos los gastos gubernamentales deben hacerse dentro de un marco de utilidad y austeridad. 3 LPRA sec. 283a (h).

Cónsono con lo anterior, y en lo aquí atinente, toda vez el deber que se reconoce a los jefes de las dependencias gubernamentales, así como también la responsabilidad que les reviste en cuanto al control y disposición de los fondos públicos, la Ley Núm. 230, *supra*, expresamente estatuye una obligación de reembolso en caso de que estos actúen fuera del marco legal de sus facultades al respecto.  En específico, dispone como sigue:

[…]

(g) Los jefes de las dependencias o sus representantes autorizados serán responsables de la legalidad, exactitud, propiedad, necesidad y corrección de todos los gastos que sometan para pago al Secretario o a un pagador debidamente nombrado por el Secretario. Responderán, además, al gobierno con sus fondos o bienes personales, por cualquier pago ilegal, impropio o incorrecto, que el Secretario o un pagador hiciere por haber sido dicho pago certificado como legal y correcto por el jefe de la dependencia o por su representante autorizado.

[…]. 3 LPRA sec. 283h (g).

### c

Como norma, los tribunales solo están llamados a atender asuntos de carácter justiciable. *Super Asphalt v. AFI y otro*, 206 DPR 803, 815 (2021); *Amador Roberts et als. v. ELA*, 191 DPR 268, 282 (2014). La doctrina de justiciabilidad exige la adjudicación de casos o controversias genuinas entre partes opuestas, que tienen un interés legítimo en obtener un remedio capaz de afectar sus relaciones jurídicas, permitiendo, así, la intervención oportuna, reparadora y eficaz de los tribunales. *Super Asphalt v. AFI y otro,* supra; *Lozada Tirado et al. v. Testigos Jehová,* 177 DPR 893, 907 (2010); *E.L.A. v. Aguayo,* 80 DPR 552, 584 (1958). Este principio constituye una autolimitación al ejercicio del Poder Judicial de arraigo constitucional y persigue el fin de evitar que se obtenga un fallo sobre una controversia inexistente, una determinación de un derecho antes de que el mismo sea reclamado o una sentencia en referencia a un asunto que, al momento de ser emitida, no tendría efectos prácticos sobre la cuestión sometida. *Super Asphalt v. AFI y otro,* supra, pág. 816.  Así pues, el ejercicio válido del poder judicial sólo se justifica si media la existencia de una controversia real y sustancial.

En virtud de lo anterior, se reconoce la doctrina de la academicidad como una vertiente del principio de justiciabilidad. *Super Asphalt v. AFI y otro,* supra, pág. 815.  Como norma, un caso es académico "cuando ocurren cambios durante el

trámite judicial de una controversia particular que hacen que ésta pierda su actualidad, de modo que el remedio que pueda dictar el tribunal no ha de llegar a tener efecto real alguno en cuanto a esa controversia." *C.E.E. v. Depto. de Estado*, 134 DPR 927, 935 (1993). De esta forma, los cambios fácticos acaecidos durante el cauce de determinado caso que tornen en ficticia su solución tienen el efecto de privar de autoridad al foro judicial, por lo que está llamado a abstenerse de considerar sus méritos. *Super Asphalt v. AFI y otro,* supra, pág. 816.

**D**

De otro lado, el recurso extraordinario de *injunction* es un mandamiento judicial en virtud del cual se requiere que se ordene a una persona que se abstenga de hacer, o de permitir que se haga, determinada cosa que infrinja o perjudique el derecho de otra. Art. 675, del Código de Enjuiciamiento Civil de Puerto Rico, 32 LPRA sec. 3521. El mismo fue adoptado del sistema de equidad inglés y se utiliza, principalmente, en casos donde no hay otro remedio adecuado en ley, todo con el fin de evitar la ocurrencia de un daño inminente. *Plaza Las Américas v. N & H,* 166 DPR 631, 643 (2005).

Nuestro ordenamiento jurídico distingue tres modalidades del recurso de *injunction.* A saber: el entredicho provisional, el *injunction* preliminar y el *injunction* permanente. *Next Step Medical v. Bromedicon et al,* 190 DPR 474, 485-486 (2014). En lo pertinente, el *injunction* preliminar es el remedio provisional emitido en cualquier momento de un pleito, luego de la celebración de una vista en la que las partes puedan presentar prueba en apoyo a su argumento. Su fin medular es mantener sin alteración la situación planteada, hasta tanto culmine el juicio en su fondo. La orden *injunction* preliminar evita que la conducta del demandado convierta en académica la sentencia o que ocasione daños mayores a quien lo

solicita durante la pendencia del litigio. *Mun. Ponce v. Gobernador,* 136 DPR 776, 784 (1994).

La Regla 57.3 de Procedimiento Civil, 32 DPR Ap. V, R. 57.3, establece los criterios que el tribunal debe considerar al evaluar la procedencia de un *injunction* preliminar, a saber: (1) la naturaleza de los daños a los que está expuesta a parte peticionaria de concederse o denegarse el *injunction*; (2) la irreparabilidad o la existencia de un remedio adecuado en ley, (3) la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo, (4) la probabilidad de que la causa se torne académica de no concederse el *injunction*, (5) el posible impacto sobre el interés público del remedio que se solicita y (6) la diligencia y la buena fe con que ha actuado la parte peticionaria.

Por su parte, la norma dispone que los tribunales deben emplear los siguientes criterios en la evaluación de la expedición de un *injunction* permanente: 1) si el demandante ha prevalecido o puede prevalecer en un juicio en sus méritos; (2) si el demandante posee algún remedio adecuado en ley o si el *injunction* es el único del cual dispone para vindicar su derecho; (3) el interés público afectado y; (4) el balance de equidades entre todas las partes. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, 428 (2008); *Mun. De Loíza v. Sucs. Suárez et al.,* 154 DPR 333, 367 (2001).

Ahora bien, todos los requisitos antes expuestos, tanto los promulgados por la jurisprudencia interpretativa vigente, como los enumerados en las Reglas de Procedimiento Civil, *supra*, no son absolutos, sino directrices que emplea el tribunal al momento de decidir si la evidencia ante sí presentada justifica la concesión de un recurso de *injunction. Next Step Medical Co. v. Bromedicon, Inc.*, supra, pág. 487. Por tanto, dicha determinación es una inherente a la sana discreción del tribunal, considerando, tanto los intereses, como las necesidades de las partes involucradas en el

caso. *Íd.* El recurso de *injunction* debe expedirse con mesura y únicamente ante una demostración clara e inequívoca de una violación de un derecho. *Íd.* La determinación que al respecto en su día emita el tribunal de hechos, no se revocará en apelación salvo se demuestre que este transgredió los límites impuestos a sus facultades adjudicativas. *Íd.*

**E**

La *sentencia declaratoria* es un "mecanismo remedial y profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra quien la solicita". *Rosario Rodríguez v. Rosado Colomer et al.*, 208 DPR 419, 427 (2021); *Beltrán Cintrón et al. v. ELA et al,* 204 DPR 89,109 (2020), citando a *Alcalde de Guayama v. ELA,* 192 DPR 329, 333 (2015). El fin de este recurso extraordinario es disipar una incertidumbre jurídica y contribuir a la paz social. Por tanto, puede dictarse en procesos en los cuales "los hechos alegados demuestran que existe una controversia sustancial entre las partes que tienen intereses legales adversos, sin que medie lesión previa de los mismos". *Beltrán Cintrón et al. v. ELA et al,* supra. Asimismo, se ha reconocido que la sentencia declaratoria es un mecanismo idóneo para adjudicar controversias de naturaleza constitucional. *Asoc. De Periodista v. González,* 127 DPR 704, 723-724 (1991).

En específico, la Regla 59.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 59.1, expresamente dispone que los tribunales de instancia tendrán autoridad para declarar derechos, estados y otras relaciones jurídicas, aunque se inste o pueda instarse otro remedio. Dicho estatuto, claramente establece que no se estimará como motivo suficiente para atacar un procedimiento o una acción, el que se solicite una resolución o sentencia declaratoria. Compete, entonces, a la parte promovente, demostrar la existencia o

inminencia de un daño claro y real, no imaginario o hipotético. *Senado v. Tribunal Supremo y Otros,* 208 DPR 115, 134 (2021).

**F**

Finalmente, nuestro estado de derecho reconoce e impulsa el interés de que todo litigante tenga su día en corte. *Rivera et al. v. Superior Pkg., Inc. et al.,* 132 DPR 115, 121 (1992). El empleo de los recursos adjudicativos en nuestra jurisdicción se fundamenta en la política judicial que establece que los casos se ventilen en sus méritos de forma rápida, justa y económica. *Amaro González v. First Fed. Savs.,* 132 DPR 1042, 1052 (1993). Considerando eso, la posición doctrinaria en nuestro sistema de ley es salvaguardar, como norma general, el derecho de las partes a su efectivo acceso a los tribunales. *Imp. Vilca, Inc. v. Hogares Creas Inc.,* 118 DPR 679, 686-687 (1987). En consecuencia, la desestimación de un pleito, previo a entrar a considerar los argumentos que en el mismo se plantean, constituye el último recurso al cual se debe acudir, luego de que otros mecanismos resulten ser ineficaces en el orden de administrar la justicia. *SLG Sierra v. Rodríguez,* 163 DPR 738, 746 (2005).

Ahora bien, la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5), provee para que una parte solicite al foro competente la desestimación de un pleito incoado en su contra, bajo el fundamento de que la reclamación en controversia no justifica la concesión de un remedio. *Blassino Alvarado et al v. Reyes Blassino et al,* 2024 TSPR 93, 214 DPR ___ (2024). Esta defensa "no está sujeta a la regla general sobre acumulación y renuncia de defensas" establecida en el ordenamiento procesal, y "puede aducirse en cualquier alegación responsiva, en una moción para que se dicte sentencia por las alegaciones e, incluso, luego de comenzado el juicio". *Conde Cruz v. Resto Rodríguez et al.,* 205 DPR 1043, 1066-

1067 (2020). En atención a la política pública antes expuesta, para que el referido mecanismo de desestimación proceda en derecho, presupone que se den por correctos y bien alegados los hechos incluidos en la demanda, así como que los mismos se expongan de forma clara y concluyente, sin que de su faz se desprenda margen alguno a dudas. *Blassino Alvarado et al v. Reyes Blassino et al,* supra; *Costas Elena y otros v. Magic Sport y otros,* 2024 TSPR 13, 213 DPR ___ (2024); *Eagle Security v. Efrón Dorado et al.,* 211 DPR 70, 84 (2023); *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, pág. 428 (2008); *Colón v. Lotería,* 167 DPR 625, 649 (2006); *Pressure Vessels PR v. Empire Gas PR,* 137 DPR 497, 504-505 (1994).

De igual forma, la demanda deberá ser interpretada con mayor liberalidad a favor de las alegaciones de la parte demandante, por lo que, recayendo la carga probatoria en el promovente de la moción de desestimación, este viene obligado a demostrar que aquel no tiene derecho a remedio alguno al amparo de los hechos que puedan ser probados en apoyo a su requerimiento. *Dorante v. Wrangler of P.R.,* 145 DPR 408, 414 (1998). En este supuesto, la función judicial estriba en determinar si, aun resolviendo toda incertidumbre en beneficio de la parte demandante, su demanda es suficiente para constituir una reclamación válida. *Blassino Alvarado et al v. Reyes Blassino et al,* supra; *Pressure Vessels PR v. Empire Gas PR,* supra, pág. 505. Por tanto, si el tribunal estima que una demanda no sobrevive un ataque bajo la mencionada Regla, debe desestimarla sin dar paso a más procedimientos. Así, "[d]e determinar que no cumple con el estándar de plausibilidad, el tribunal debe desestimar la demanda y no permitir que una demanda insuficiente proceda bajo el pretexto de que con el descubrimiento pueden probarse las alegaciones conclusorias". R.

Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 307 (6ta Ed. 2017).

**III**

En la presente causa, plantea la parte apelante que erró el Tribunal de Primera Instancia al desestimar su demanda bajo el fundamento de academicidad, así como, también, al considerar que las alegaciones contendidas en la misma no justificaban la concesión de un remedio por no cumplir con el estándar de plausibilidad. De igual forma, la parte apelante aduce que el foro primario incidió al resolver que, contrario a sus argumentos, el uso de fondos públicos para la campaña publicitaria objeto de litigio no estaba viciado de inconstitucionalidad. Con relación a ello, aduce que el tribunal sentenciador incurrió en error al no emitir el interdicto solicitado ni la sentencia declaratoria peticionada, ello al resolver que la frase *"Haciendo que las cosas pasen"* no tenía una finalidad político partidista que impidiera que fuera sufragada con fondos públicos. Finalmente, la parte apelante impugna el hecho de que el Tribunal de Primera Instancia no hubiese ordenado a los apelados Cidre Miranda y Vélez Vega reembolsar, en su carácter personal, los fondos utilizados en la campaña en controversia. Habiendo examinado los referidos señalamientos a la luz del derecho aplicable, resolvemos confirmar la *Sentencia* apelada.

Un examen del expediente de autos mueve nuestro criterio a coincidir con lo resuelto por el tribunal primario. Al entender sobre los documentos que ante nos obran, no podemos, sino, concluir, que, en su gestión adjudicativa, el tribunal primario aplicó correctamente las normas procesales y sustantivas que adecuadamente atienden la controversia de epígrafe. Ciertamente, la demanda enmendada contiene unas alegaciones, las cuales, tomadas como ciertas, no establecen una posible causa de acción que amerite la concesión de un remedio.

En principio, tal cual dispuesto por el tribunal sentenciador, una lectura de las alegaciones en disputa permite entrever que las mismas adolecen de especificidad. La parte apelante no propone cuestiones fácticas suficientes que muevan el criterio judicial a reconocer que, bajo el estado de derecho aplicable, sean susceptibles de una reparación en ley. Las alegaciones en cuestión son generalizadas, especulativas y, en su mayoría, proponen cuestiones de derecho. A manera de ejemplo, en su octava alegación, la parte apelante expuso como sigue:

[…]

8. Durante al menos los pasados seis (6) meses, Pierluisi Urrutia, Cidre Miranda y Vélez Vega han incurrido en gastos de más de $3,000,000 con fondos públicos en una campaña política en los medios de comunicación masiva (radio, televisión, prensa escrita e internet) con el único fin de realzar las aspiraciones políticas de reelección de Pierluisi Urrutia como Gobernador en las próximas elecciones generales.

[…].

Al entender sobre los términos de la transcrita alegación, coincidimos con que la misma es totalmente conclusoria y carente de hecho alguno que la sostenga. Igual condición reviste a la novena alegación de las incluidas en la demanda de epígrafe:

[…]

9. La campaña utiliza el slogan o estribillo político de que Pierluisi está "Haciendo que las cosas pasen" para contrarrestar las críticas a su falta de obra, incluyendo las más recientes hechas por su adversaria primarista, Jennifer A. González Colón.

[…].

La referida aseveración es totalmente especulativa y constitutiva de una mera conclusión no sostenida por fundamento fáctico alguno que permita una mayor consideración de sus términos. Este hecho, en efecto, valida la postura de que la misma, al igual que las restantes en la demanda de epígrafe, no cumple con el estándar de plausibilidad que garantiza su suficiencia. Por tanto,

y toda vez que la prueba con la que la parte apelante acompañó su pliego no subsana el defecto procesal señalado, la desestimación decretada por el foro primario al amparo de lo dispuesto en la Regla 10.2(5) de Procedimiento Civil, *supra*, constituyó el quehacer adjudicativo más apropiado y correcto.

A igual conclusión llegamos respecto a la desestimación de la solicitud de interdicto preliminar y permanente, bajo el fundamento de academicidad. En virtud de la misma, la parte apelante solicitó, entre otros remedios, que se ordenara a los apelados detener la difusión por los medios de comunicación de la campaña publicitaria en disputa. Sin embargo, conforme surge de autos, la publicación de los anuncios en controversia tuvo lugar en el año 2023, ello previo al inicio de la veda electoral. A su vez, según expresamente indicó el Tribunal de Primera Instancia, de conformidad con la determinación de la Oficina del Contralor Electoral, con fecha del 2 de enero de 2024, ya iniciado el periodo de la veda electoral, dicha dependencia dispuso que la frase en litigio no podía emplearse en ninguna promoción. Siendo así, forzoso es concluir que la controversia al respecto perdió vigencia, por lo que la misma no amerita pronunciamiento judicial alguno, toda vez que, al no existir disputa entre las partes, el mismo no tendría efecto jurídico. Por tanto, dado a que la frase en pugna no está siendo utilizada en las promociones gubernamentales, ninguna orden para evitar su difusión pública resulta necesaria.

Por su parte, la parte apelante impugna la determinación por la cual se resolvió la constitucionalidad del uso de fondos públicos para financiar la producción y promoción de la campaña publicitaria objeto de litigio. Es su contención que la misma respondió a fines político partidistas tendentes a promover la figura de un candidato político. Sin embargo, tras entender sobre los anejos que obran ante nos, diferimos de su criterio. Según resuelto por el Tribunal de

Primera Instancia, los anuncios en controversia, con la particularidad de la inclusión de la frase *"Haciendo que las cosas pasen"*, remiten a esfuerzos gubernamentales de distintas agencias, que especifican los términos de programas, proyectos y obras para la ciudadanía. Ninguno de ellos evoca una clara intención de beneficio político, si no, más bien, de información pública respecto al progreso, acceso y propósito de los mismos. Las promociones aquí impugnadas no contienen emblemas relacionados a algún partido político. De igual forma, tampoco destacan alguna insignia o color a los fines de que se les relacione con un gremio en particular. A su vez, nada en el expediente permite concluir que los anuncios en cuestión se emplearon con el propósito exclusivo de beneficiar la campaña reeleccionaria del apelado Pierluisi Urrutia.

Sobre lo antes expuesto, entendemos menester destacar que las particularidades del caso de autos se distinguen de aquellas acontecidas en *P.P.D. v. Gobernador I,* supra, hecho que impide a la parte apelante sustentar su postura en lo allí resuelto. En aquella ocasión, nuestro más Alto Foro consolidó tres (3) casos independientes que versaban sobre el uso de fondos públicos para enaltecer la figura de determinado candidato político mediante ciertos esfuerzos publicitarios. El primero de ello, versó sobre una demanda incoada por el Partido Popular Democrático en contra del entonces Gobernador Pedro Rosselló González. En la misma, se alegó que se transmitieron, y se publicaron, ciertos anuncios producidos por el Departamento de Salud, en el que directamente se atacó la figura del entonces Alcalde de San Juan, señor Héctor L. Acevedo, ello al cuestionarse la alegada falta de gestión de este de repartir las tarjetas de salud del Estado. En cuanto a este caso, el Tribunal Supremo resolvió que los anuncios impugnados no cumplían con un fin público, toda vez que, de su faz, los mismos constituían un ataque directo al Alcalde, quien, a su vez, era el

presidente del partido opositor y contrincante del entonces gobernador Rosselló González en las elecciones del año 1996. De esta forma, determinó que la campaña impugnada no servía a propósitos informativos sobre el programa de la tarjeta de salud.

En el segundo de los casos consolidados en *P.P.D. v. Gobernador I,* supra, el Tribunal Supremo atendió una demanda promovida en el año 1995 por el candidato a Alcalde de Carolina por el Partido Nuevo Progresista en contra del entonces Alcalde de dicho Municipio, y candidato a la reelección por el Partido Popular Democrático, el señor José A. Aponte. En esencia, se alegó que el alcalde Aponte difundió en su jurisdicción, mediante distintos medios de promoción, como "bumper stickers", rótulos, publicaciones en periódicos, carteles en postes, vehículos oficiales y lugares públicos, y camisas oficiales, una campaña publicitaria que destacó como su logo el número "10", la frase "Una década de superación", y que resaltó el periodo de años "1985-1995", término de su incumbencia. Específicamente, se adujo que la referida campaña, financiada con fondos públicos, realzaba una administración municipal determinada, y, en consecuencia, a la figura del Alcalde Aponte como candidato para ser reelecto. Al evaluar los hechos establecidos y estipulados entre las partes, el más Alto Foro dispuso que la referida campaña incorporó expresiones colaterales de carácter despectivo respecto a la anterior administración municipal bajo el Partido Nuevo Progresista, con la finalidad de adelantar objetivos político partidistas del Alcalde y su administración. Añadió que el material impreso de la campaña en pugna destacaba masivamente el logo aducido y resaltaba las obras y logros del funcionario demandado, concediéndole una ventaja económica indebida para su candidatura, y perjudicando, no solo a su opositor, sino, también, al electorado. De este modo, Tribunal Supremo, concluyó que los fondos invertidos en la campaña en

cuestión no fueron destinados a un fin público legítimo, por lo que proveyó para la inmediata paralización de la misma.

El tercero de los casos consolidados versó sobre la presentación de una demanda por parte del Partido Popular Democrático en contra del Partido Nuevo Progresista. En la misma, se adujo que el partido demandado había incurrido en gastos ascendentes a más de $50,000.00 del erario en una campaña publicitaria, cuyo único fin era resaltar la figura del entonces gobernador y candidato a reelección, señor Pedro Rosselló González. Según se indicó, los anuncios publicitarios pertinentes hacían referencia a colores y lemas del Partido Nuevo Progresista, incluían la frase "Compromiso cumplido", acompañada con una marca de cotejo, y realzaban la imagen y candidatura de Rosselló González, ello para garantizar que fuera reelecto. Mediante estipulación de las partes, se presentaron los anuncios en controversia y prueba pericial en el área de las comunicaciones. Tras entender sobre la prueba y las incidencias del caso, el Tribunal Supremo resolvió que la campaña en disputa tenía el propósito de influir en la opinión pública a favor del partido en el poder gubernamental y de su candidato a la gobernación. Entendió, el más Alto Foro, que la misma empleó el uso y repetición de lemas y estribillos de campaña, logos y símbolos del partido en el poder, colores injerentes al mismo y el empleo de técnicas visuales particulares para obtener el favor de votantes en la campaña electoral venidera. A tenor con ello, dispuso que la campaña publicitaria en cuestión no era de carácter informativo, sino una con fines político partidistas para lograr un triunfo eleccionario que, conforme a la prueba pericial presentada, al ser sufragada con el erario, produjo un ahorro al Partido Nuevo Progresista, todo en clara desventaja sobre el partido opositor.

Ciertamente, las situaciones atendidas y resueltas en *P.P.D. v. Gobernador I,* supra, distan de las incidencias acontecidas en el

caso de epígrafe. De ahí que, conforme resuelto por el tribunal apelado, y según lo expuesto por los apelados en su recurso en oposición a la apelación que nos ocupa, no vemos cómo la parte apelante pretende sustentar su postura apoyándose en lo allí resuelto. Al escrutar los anuncios publicitarios aquí en controversia, a la luz de los requisitos establecidos por el ordenamiento jurídico para determinar si los mismos cumplen un fin público que valide el empleo del erario, coincidimos en que los mismos concurren a favor de validar el carácter público resuelto. La campaña publicitaria en disputa promueve programas y proyectos beneficiosos para la ciudadanía, ello a la luz de los objetivos gubernamentales injerentes a las funciones públicas que le asisten al Gobierno. La misma no representa ataque político partidista alguno al partido opositor, no constituye un subterfugio para favorecer al partido en el poder gubernamental, ni evoca alguna intención particular a los fines de influir en el electorado. Nuevamente reiteramos que los anuncios objeto de litigio, no utilizan símbolos ni colores distintivos de partido político en particular alguno. Igualmente, tampoco emplean técnicas visuales tendentes a enfocar la atención de la ciudadanía en la propuesta de algún gremio específico. Siendo de este modo, ninguna inconstitucionalidad puede declararse a los efectos de suprimir la legalidad de la inversión del erario en la producción y difusión de los anuncios en litigio. Además, tal cual esbozáramos en nuestra previa exposición doctrinal, conforme resuelto en *P.P.D. v Gobernador I,* supra, el hecho de que la figura del apelado Pierluisi Urrutia gozara de algún beneficio incidental derivado de la campaña en cuestión, no incide sobre la legitimidad de la misma. Habiéndose resuelto la validez de la erogación de los fondos públicos en controversia, ello no desvirtúa el fin público propio de la acción gubernamental impugnada.

Finalmente, toda vez establecida la validez de la campaña publicitaria que nos atañe, resulta improcedente acoger el planteamiento de la parte apelante en cuanto a que debía ordenarse a los apelados Cidre Miranda y Vélez Vega, en su carácter personal, la restitución de los fondos públicos empleados en la misma. Toda vez dicha acción fue una válida, ninguna responsabilidad colateral a los funcionarios involucrados puede imponerse, ello en cuanto a la ejecución de las facultades legales que les asisten. Por tanto, los argumentos que al respecto propone la parte apelante, carecen de eficacia.

En mérito de lo antes expuesto, confirmamos el dictamen apelado en toda su extensión. El mismo es cónsono con el derecho procesal y sustantivo aplicable, razón por la cual estamos impedidos de dejar sin efecto sus términos.

**IV**

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones